UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,            **MEMORANDUM OF DECISION AND ORDER**

                         Plaintiff,            CR-07-0047 (ADS)

      - against -

MICHAEL PRICE,

                         Defendant.
----------------------------------------------------------X

**A P P E A R A N C E S:**

    **LORETTA E. LYNCH,**
    United States Attorney
    Eastern District of New York
    610 Federal Plaza
    Central Islip, NY 11722
    By:    Burton Ryan,
             Assistant U.S. Attorney

    **TRACEY L. GAFFEY, ESQ.**
    Office of the Federal Defenders of New York
    460 Federal Plaza
    Central Islip, NY 11722

**SPATT, District Judge.**

On April 4, 2008, for the crime of felon in possession of a firearm, a Class C Felony, Michael Price ("the Releasee"), was sentenced by this Court to eighty (80) months imprisonment followed by a three (3) year term of supervised release, with the special condition that he shall participate in drug abuse and/or alcohol abuse therapy at the discretion of the Probation Department. Michael Price commenced Supervised

1

Release on January 13, 2012.

## I. The Current Violation of Supervised Release Charges

In a Violation of Supervised Release Report dated June 22, 2012, three violations were charged against the Releasee. Two of the three charges were based on an incident that occurred on June 13, 2012. On that date, the Releasee was arrested by members of the Nassau County Police Department. Following a traffic stop, he was charged with felony and misdemeanor possession of a controlled substance. This occurred while he was operating a motor vehicle on Newbridge Road in Bellmore, New York. The two violation charges at issue are:

Charge One: New criminal conduct – criminal possession of a controlled substance – intent to sell.

Charge Two: Unlawful possession of a controlled substance.

In addition, the Releasee was also charged with a third violation, Charge Three, unlawful use of controlled substance. There was a fourth violation, namely association with a person engaged in criminal activity, which was withdrawn by the Government, on the record, at the Hearing on November 8, 2012.

## II. The Hearing

### A. As To Charge Number 3 – Unlawful Use Of A Controlled Substance

In testimony given on October 23, 2012, Senior United States Probation Officer Robbie J. Patus was the sole witness as to the third violation charge. Officer Patus testified that, on March 22, 2012, the Releasee tested positive for cocaine. This proof was unrefuted by the Releasee.

2

**B. As To Charge Numbers 1 and 2**

**Charge One:** New Criminal Conduct – Criminal Possession of a Controlled Substance – Intent to Sell.

**Charge Two:** Unlawful Possession of a Controlled Substance.

The Violation of Supervised Release Hearing took place on two days, October 23, 2012 and November 8, 2012. On October 23, 2012, only one witness testified. Probation Officer Patus testified that he supervised the Releasee from January 20, 2012. The Releasee read and signed the Conditions of Supervised Release. Two of the conditions of Supervised Release were that the Releasee was not to commit any crimes; and he consented to drug testing. On June 13, 2012, Probation Officer Patus received a telephone call from Nassau County Police Officer Niall Bourke, who advised him that the Releasee has been arrested. Probation Officer Patus received copies of the police reports. The Releasee was charged with criminal possession of a controlled substance. The substances were taken to the Nassau County Police Department Headquarters.

In October 2012, Probation Officer Patus went to the Nassau County Police Department Headquarters and retrieved the narcotics involved. The substances were transferred to his custody. He brought the substances to the Suffolk County Police Department Crime Lab to be analyzed. He received the results of the analysis. In a Preliminary Report of Chemical Analysis or Examination by the County of Suffolk Crime Laboratory (Gov't Ex. 2), the results of the analysis were as follows:

**Preliminary Report of Chemical Analysis or Examination**

**CONCLUSIONS**

Item #1 - Chemical analysis indicated the presence of heroin.

Weight less than 1/8 ounce.

Item 2.1 - Chemical analysis of one bag indicated the presence of cocaine.

Weight less than 500mg pure.

I certify that the within is a true and correct original and copy of the laboratory report in this case.
This report has an associated case file.

John Mario                                      10/18/12
Forensic Scientist                              Date

During the testimony of Probation Officer Patus, the Government gave chain of custody documents to counsel for the Releasee.

As a result of the information and documents he received with regard to the incidents of June 13, 2010, Probation Officer Patus completed and filed the Violation of Supervised Release Report dated June 22, 2012, now before the Court.

On cross-examination, Probation Officer Patus testified that he talked to the Releasee on March 22, 2012, the day of the positive drug test. The Releasee did admit, "to making a mistake and using cocaine." Probation Officer Patus then referred the Releasee to a drug treatment program at the Seafield Center Drug Program. He noted that Price cancelled several appointments at the Seafield Center. Probation Officer Patus testified that he saw Price at his office and at Price's home; that he was working on Straight Path for a road construction company, Bove Industries; and he did

report as required, one time per month. Price has been working for Bove Industries, having obtained that job "on his own"; on the books; and he has been working for that company to the day he was arrested on June 13, 2012.

On the second day of the Violation of Supervised Release Hearing, November 8, 2012, Nassau County Police Officer John Herman testified that on June 13, 2012, at approximately 5 pm, he was in plain clothes in an unmarked police car with Police Officer Niall Bourke. While driving in Bellmore north on Newbridge Road he observed a blue 2009 Toyota Camry make an abrupt illegal u-turn. Also, he saw that the driver of the Toyota was speaking on a cell phone. Police Officer Herman turned his vehicle, got behind the Toyota, put on his emergency lights and attempted to pull over the Toyota. However, the Toyota apparently did not pull over and traversed to the entry ramp of Exit 25 of the Southern State Parkway, traveled 40 or 50 feet, and then the vehicle stopped.

Police Officer Herman walked over to the driver's side of the Toyota. The front driver's side window was down. Police Officer Bourke approached the Toyota on the passenger's side. Police Officer Herman observed the driver of the Toyota, subsequently identified as the Releasee Michael Price, lift himself up in his seat and with his right hand put something in a pants pocket. Police Officer Herman told Price that he made an illegal u-turn and he asked him for his license, registration and insurance data. Price gave the officer his driver's license and a rental agreement for the car.

When Police Officer Herman was at the left front window talking to Price he observed some New York State Government Benefit cards in the cupholder in the center console. These cards contained photographs of white faces. Police Officer

5

Herman returned to his police car and ran the data given to him by Price through his precinct. Apparently, he found out that Price's registration had been suspended and his insurance had lapsed. However, on a second review by calling the rental company he found that the registration was not suspended and was valid.

Police Officer Herman was asking Price about the Benefit Cards he saw in the console when he saw Police Officer Bourke "nod" to him. That was their signal to make an arrest. He found out that Police Officer Bourke had discovered heroin in the console in the front seat of the Price vehicle. Police Officer Herman placed Price under arrest. While doing so, Price was moving his hands toward his rear pants pocket. Police Officer Herman felt bulges in Price's rear pants pocket and found a plastic bag containing rice and bundles of heroin and crack cocaine.

The Releasee was subsequently charged in the State capacity with the following crimes and violations:

| | |
|---|---|
| PENAL LAW, 220.03 CRIM POSS CNTRL SUBS 7TH | MISDEM A |
| PENAL LAW, 220.16 (1) CRIM POSS CNTRL SUBS 3RD SUB 1 | FELONY B |
| PENAL LAW, 220.09 (1) CRIM POSS CNTRL SUBS 4TH SUB 1 | FELONY C |
| NYS-VTL, 1160(E) ILLEGAL U-TURN | VIOL N/A |
| NYS-VTL, 1225, C2A OP MV MOBILE PHONE | VIOL N/A |

On cross-examination, Police Officer Herman testified that he asked Price about the Benefit Cards in the console and he was told that these were "friends in the car." When Herman asked for the names on the cards, he received no response. Police Officer Herman testified that he patted down the Releasee because of his movement putting his hand in his back pocket area. When Herman patted him down he

discovered a large bundle of money in Price's rear pockets, in the sum of more than $4,000; three bundles of heroin; and a plastic bag containing crack cocaine. It was later determined that the money found in Price's possession, was broken down as follows:

| | | |
|---|---|---|
| 7 | $100 bills us currency | $700.00 |
| 10 | $50 bills us currency | $500.00 |
| 140 | $20 bills us currency | $2,800.00 |
| 5 | $2 bills us currency | $10.00 |
| 23 | $1 bills us currency | $23.00 |
| | Total | $4,033.00 |

When he was questioned about the amount of cash he was carrying, Price responded that "he just got paid." As to the Benefit Cards that were vouchered and checked, the police came up with "nothing." A detective attempted to ascertain the owners of the cards, but could contact none of the names on the cards.

Nassau County Police Officer Niall Bourke testified that, on June 13, 2012, he was on duty, on routine patrol in plain clothes in an unmarked police car with Police Officer Herman. He described seeing the 2009 Toyota Camry making a u-turn and they pulled it over. Police Officer Bourke left his car and approached the Toyota vehicle on the passenger side. He saw the Benefit Cards in the center console and retrieved them. He also saw a "deck" of heroin in the cupholder in the console. He recognized the material to be heroin and he nodded to Police Officer Herman to arrest Price.

When Price was in custody, they retrieved plastic bags containing rice, heroin and crack cocaine. He identified a brown substance which he believed to be heroin. He also saw a substance he identified as crack cocaine. Police Officer Bourke took possession of all these items; secured and invoiced them. He retrieved the plastic bags

and the drugs contained in the bags and produced them in court when he testified.

On cross-examination, Police Officer Bourke believed that there were three Benefit Cards in the Toyota automobile. He inquired about the Benefit Cards and the Releasee said that they were not stolen. As he approached the Toyota vehicle on the passenger's side he saw the Releasee repeatedly reaching around the seat and saw him move his arms to the driver's seat area. He saw a lot of moving around by Price. When the cuffs were being placed on Price, he was repeatedly trying to reach in his rear pockets. Police Officer Bourke felt a larger object in his rear pocket. Both officers tried to prevent Price from getting the objects in his rear pockets and they retrieved those objects, namely the drugs, rice and the $4,000.

Senior United States Probation Officer Robbie Patus was recalled as a witness. He testified that he recognized the evidence he obtained from the Nassau County Police Department and the Suffolk County Crime Lab. On cross-examination, Probation Officer Patus testified that he drug tested the Releasee eleven times between January 13, 2012 and June 6, 2012 and that he tested positive only that one time on March 22, 2012. There were random urine drug tests. Also, as to the appointments with the Seafield Center Drug Program, Price did not keep any of the appointments because of his job.

### III. Discussion

#### A. The Standards

The burden of proof is on the Government in establishing a violation of supervised release by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3),

provides that a court, after considering the relevant facts set forth in 18 U.S.C. § 3553, may "revoke a term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release."

In <u>United States v. Carlton</u>, 442 F.3d 802 (2d Cir. 2006) a constitutional challenge to this standard was denied as follows:

> It is settled law that the "full panoply of rights" due a defendant in a criminal prosecution does not apply to revocation hearings for parole, for probation, or for supervised release, all of which are virtually indistinguishable for purposes of due process analysis. See <u>Morrissey v. Brewer</u>, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) (parole revocation); <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 656 (1973) (probation revocation); <u>United States v. Pelensky</u>, 129 F.3d 63, 68 (2d Cir. 1997) (revocation of supervised release); <u>United States v. Jones</u>, 299 F.3d 103, 109 (2d Cir. 2002). Because revocation proceedings generally have not been considered criminal prosecutions, they have not been subject to the procedural safeguards, including the rights to trial by jury and to accusations proved beyond a reasonable doubt, associated with a criminal trial. See <u>Pelensky</u>, 129 F.3d at 68; <u>United States v. Lettieri</u>, 910 F.2d 1067, 1068 (2d Cir. 1990); <u>see</u> <u>also</u> <u>United States v. Knights</u>, 534 U.S. 112, 120, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001); <u>Black v. Romano</u>, 471 U.S. 606, 613 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985); 18 U.S.C. § 3583.
>
> \* \* \* \*
>
> In other words, it is of no constitutional concern that the conditions placed on a defendant's liberty in supervised release encompass by implication the additional condition expressed in § 3583(e)(3); that the defendant surrender his rights to trial by jury and to having accusations against him proved beyond a reasonable doubt.
>
> \* \* \* \*
>
> . . . as discussed above, accusations proved by a preponderance of evidence do not violate the <u>Fifth</u> of <u>Sixth</u>

9

> Amendments in the context of supervised release. Moreover, the district court acted pursuant to its statutory authority in "finding by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3), and hence committed no error by applying that standard.

Also, as stated above, it is well settled that "the full panoply of rights due to a defendant in a criminal prosecution do not apply for violations of supervised release hearings." See United States v. Pelensky, 129 F.3d 63, 68 (2d Cir. 1997). "Because revocation proceedings generally have not been considered criminal prosecutions, they have not been subject to the procedural safeguards, including the rights to trial by jury and to accusations proved beyond a reasonable doubt, associated with a criminal trial." United States v. Carlton, 442 F.3d 802, 807 (2d Cir. 2006). See Pelensky, 129 F.3d at 68; United States v. Lettieri, 910 F.2d 1067, 1068 (2d Cir. 1990) see also United States v. Knights, 534 U.S. 112, 120, 122 S. Ct. 587, 592, 151 L. Ed. 2d 497, (2001); 18 U.S.C. § 3583.

Indeed, the Supreme Court has instructed that "the process should be flexible enough to consider evidence including letters, affidavits and other material that would not be admissible in an adversary criminal trial." Morrissey v. Brewer, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604, 33 L. Ed. 2d 484 (1971). See also Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) (The Court does not "intend to prohibit use where appropriate of the conventional substitutes for live testimony including affidavits, depositions and documentary evidence."). Also, reliable hearsay evidence may be admitted as a substitute for live testimony. United States v. Pratt, 52 F.3d 671, 676, 677 (7th Cir. 1995).

Further, as stated in United States v. Brasi, 599 F.3d 176, 179 (2d Cir. 2010), it was succinctly stated that, "accordingly, we have no difficulty concluding that the Federal Rules of Evidence do not apply in full at supervised release revocation proceedings . . . put differently, district courts need not comply with the Federal Rules of Evidence during supervised release revocation proceeding, so long as their findings are based on 'verified facts' and 'accurate knowledge'."

**B. The Findings**

    1. Charge One - Criminal Possession of a Controlled Substance - Intent to Sell.

    2. Charge Two - Unlawful Possession of a Controlled Substance.

The testimony and exhibits in support of Charges One and Two are related, and the discussion as to these two charges will be combined.

The Court finds that the Government established the following facts, by a preponderance of the evidence.

(1) There was reasonable suspicion for the police officers to pull over and stop the vehicle operated by Price. First, the vehicle was making an illegal u-turn. Second, the operator was talking on a cell phone. These are both traffic violations, and the police officers had the right to stop the vehicle and issue traffic summonses, if required.

(2) Once legally stopped, the Court finds that the police officers has reasonable suspicion to search the vehicle. The police officers had observed New York State Benefit Cards in the console not belonging to the Releasee.

(3) The Court further finds that the police officers had probable cause to arrest the Releasee Michael Price. Police Officer Niall Bourke testified that he saw illegal drugs in the center console of the automobile. He could see that the drugs were "a

deck of heroin."

Of course, subsequently, a pat down of the Releasee revealed additional illegal drugs and $4,000 in cash.

### IV. Conclusions

(1)  As to Charge One – the Court finds that the Government established, by a preponderance of the evidence, that on June 13, 2012, the Releasee violated the conditions of his Supervised Release in that the Releasee, Michael Price did knowingly and unlawfully possess heroin and crack cocaine, in his automobile and on his person, with the intent to sell the said drugs.

(2)  As to Charge Two – the Court finds that the Government established, by a preponderance of the evidence, that on June 13, 2012, the Releasee violated the conditions of his Supervised Release in that the Releasee, Michael Price did knowingly and unlawfully possess heroin and crack cocaine, in his automobile and on his person.

(3)  As to Charge Three – the Court finds that the Government established, by a preponderance of the evidence, that on March 22, 2012, the Releasee violated the conditions of his Supervised Release, by the unlawful use of a controlled substance, namely cocaine.

**SO ORDERED.**

Dated:     Central Islip, New York
           February 26, 2013

                                                   /s/ ARTHUR D. SPATT
                                                    ARTHUR D. SPATT
                                            United States District Judge